UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TRUSTEES FOR THE MASON TENDERS
DISTRICT COUNCILWELFARE FUND,
PENSION FUND, ANNUITY FUND, and
TRAINING PROGRAM FUND, and ROBERT
BONANZA, as Business Manager of the MASON
TENDERS DISTRICT COUNCIL OF GREATER
NEW YORK,

       Petitioners,       16 Civ. 6387 (PKC)

  -against-          MEMORANDUM
                  AND ORDER

SUPER, LLC,

       Respondent.
-----------------------------------------------------------x

CASTEL, District Judge:

  This is an action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, section 502(d)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm an arbitration award rendered by Joseph A. Harris on August 12, 2015 (the "Award"). Petitioners, the Trustees for the Mason Tenders District Council Welfare, Pension, Annuity, and Training Program Funds (the "Funds") and Robert Bonanza, business manager and representative for the Mason Tenders District Council of Greater New York (the "Union"), seek to confirm the Award, which ordered respondent Super, LLC ("Super") to pay the Funds $200,470.73 in delinquent benefit fund contributions, union dues, and PAC contributions, as well as interest, liquidated damages, costs, and fees for the period of May 16, 2013 through February 27, 2015. To date, Super has not opposed the petition or otherwise appeared in this action. For the reasons set forth below, petitioners' motion is GRANTED.

BACKGROUND

Because defendant neither appeared at the arbitration hearing nor responded to the instant motion, the following facts are uncontested. Each of the Funds is an employee benefit plan as defined in Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a multiemployer plan within the meaning of Section 3 (37)(A) of ERISA, 29 U.S.C. § 10012(37)(A). (Decl. of Haluk Savci, December 20, 2016, Dkt. No. 14, at ¶ 3.) Super, a New Jersey limited liability company, agreed to be bound by the terms of the Project Labor Agreement Covering Specified Construction Work under the Capital Improvement Program for Fiscal Years 2009-2014 on behalf of the New York City School Construction Authority ("PLA"). (Id. at Ex. 2.) Tailor Dominguez, President of Super, signed a Sub-Contractor Affidavit of Project Labor Agreement on April 25, 2014, stating that his company would be bound by the provisions of the PLA "with respect to all work to be performed under the solicitation." (Id.) The PLA obligates bound contractors to pay benefit contributions for covered work to the Funds in accordance with the rates set forth therein, along with collections due to several other funds, of which the Funds are the authorized collection agent. (Id. at ¶ 10.)

Super was bound, independently of the PLA, to make these same payments pursuant to the Trade Agreement Between the Mason Tenders' District Council of Greater New York and Laborers' Local 78 of the Laborers' International Union of North America and Super, effective February 1, 2013, through July 30, 2015 (the "MTDC Independent Agreement"). (Decl. of Haluk Savci, June 15, 2017, Dkt. No. 17, at ¶ 4, Ex. 1.) This agreement was signed by Tailor Dominguez on May 16, 2013. (Id. at Ex. 1.)

Each of the Funds is administered pursuant to one or more Trust Agreements, to which contractor signatories to the PLA are bound under Article 11, Section 2(B), including the

2

Trust Funds' arbitration procedures for allegedly delinquent contributions. (Decl. of Haluk Savci, December 20, 2016, at ¶ 11, Ex. 2.) The MTDC Independent Agreement also binds signatories to these Trust Agreements and arbitration procedures. (Decl. of Haluk Savci, June 15, 2017, at ¶ 4, Ex. 1.) The Trust Agreements set forth arbitration procedures and rules (the "Arbitration Procedures") to govern audit and delinquency disputes with employers. (Decl. of Haluk Savci, December 20, 2016, at Ex. 4.) The Trust Agreements vest the trustees of the Funds with the power to demand, collect, and receive employer contributions and set forth procedures for the collection of delinquent contributions. (Id. at ¶ 12, Ex. 3.) Sections 9.8 and 9.9 of article IX of each Trust Agreement provide that, in a successful legal action for unpaid contributions commenced by the Funds, Super shall pay all unpaid contributions due and payable, interest on such unpaid contributions, interest on the unpaid contributions as and for liquidated damages, attorneys' fees and costs of the action, and any other legal or equitable relief deemed appropriate. (Id. at ¶ 15, Ex. 3.)

After notifying Super of delinquencies discovered in audits of the company and unsuccessfully seeking payment, on June 30, 2015, the Funds forwarded a notice of intent to arbitrate, together with a copy of the Arbitration Procedures, to Super. (Id. at ¶ 16-17.) The audits were based on an examination of Super's books and records performed by the Funds' auditors, as authorized under the PSA and Trust Agreements. (Id.) On July 1, 2015, arbitrator Harris sent notice to the Funds and Super scheduling an arbitration hearing for August 4, 2015. (Id. at ¶ 18.) Super did not appear at the hearing, which accordingly proceeded as a default hearing. (Id. at ¶ 19.) The Funds presented as evidence the audit reports prepared by the Funds' auditors, detailing Super's delinquent fringe benefit contributions, dues and PAC contributions, and accrued interest. (Id. at ¶ 20.)

3

Based on the evidence presented at the hearing, arbitrator Harris issued an "Opinion and Default Award" on August 12, 2015, ordering Super to pay $200,470.73 in delinquent contributions for fringes, dues and PAC contributions, liquidated damages, legal, audit, and arbitration costs and fees and accrued interest. (Id. at ¶ 21, Ex. 1.) Upon receipt of the Award, plaintiffs made a demand for payment on Super; no payments were made. (Id. at ¶ 22.)

Plaintiffs timely commenced this action on August 11, 2016. Defendant was duly served, failed to timely answer the complaint, and has not otherwise appeared in this action.

LEGAL STANDARD

Section 301 of the LMRA "provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998). Under section 9 of the FAA, where parties have agreed that a court may enter judgment upon an award made pursuant to an arbitration proceeding between them, any such party may apply for an order confirming the award. 9 U.S.C. § 9. Such an application must be made within one year of the arbitrator's rendering of the award and, absent contractual provisions to the contrary, may be made to the United States District Court in which the award was made. Id. [1]

The Second Circuit has held that "default judgments in confirmation/vacatur proceedings are generally inappropriate." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

---

[1] The Second Circuit has held that the FAA does not apply to cases brought under Section 301 of the LMRA. Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewery Workers Union Local 812, Int'l Bhd. Of Teamsters, 242 F.3d 52, 53 (2d Cir. 2001). Nevertheless, plaintiffs' claims are also brought under ERISA, and the FAA may apply to ERISA-based claims. In any event, even in cases where the FAA does not apply, federal courts may look to it for "guidance in labor arbitration cases." United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 40 n. 9 (1987).

> Rather, the petition and accompanying record should[] be[] treated as akin to a motion for summary judgment based on the movant's submissions. To be sure, the [defendants] failed to respond, but the lack of a response does not justify a default judgment because, even where a non-moving party fails to respond to a motion for summary judgment, a court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied <u>even if no opposing evidentiary matter is presented</u>."

Id. at 109-10 (quoting Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in original). Accordingly, the Court treats the Fund's motion as an unopposed motion for summary judgment to confirm an arbitration award.

Summary judgment may not be granted unless the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A dispute about a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The burden of demonstrating the absence of an issue of material fact rests on the moving party, and the Court must view all facts in the light most favorable to the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Sista v. CDC Ixis N. Amer., Inc., 445 F.3d 161, 169 (2d Cir. 2006). Nonetheless, in the case of a motion to confirm an arbitration award, the burden is not difficult to meet: confirmation of an arbitral award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair, 426 F.3d at 110 (internal quotation marks and citation omitted).

"The court's function in confirming or vacating an arbitration award is severely limited." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair & Co., 462 F.3d at 110 (internal quotation marks omitted). "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." Id. (internal quotation marks omitted).

ANALYSIS

Applying the foregoing principles, petitioners have adequately demonstrated that there is no genuine issue of material fact precluding summary judgment confirming all portions of the Award. Through their documentary submissions and declaration, petitioners have proven the existence of an agreement to arbitrate between the Funds and Super. (Decl. of Haluk Savci, December 20, 2016, at Exs. 2, 4; Decl. of Haluk Savci, June 15, 2017, at Ex. 1.) The PSA was in effect for fiscal years 2009-2014 or through the completion of the work program, and the MTDC Independent Agreement was effective February 1, 2013, through July 30, 2015. (Decl. of Haluk Savci, December 20, 2016, at Ex. 2; Decl. of Haluk Savci, June 15, 2017, at Ex. 1.) The PSA and MTDC Independent Agreement expressly incorporate the Trust Agreements which contain Arbitration Procedures. (Id.) The Trust Agreements permit representatives of the Funds to audit employers, to file enforcement actions to recover any delinquencies, and to recover unpaid contributions, interest, liquidated damages, lawyers' fees, costs, and expenses. (Decl. of Haluk Savci, December 20, 2016, at Ex. 4.) The Arbitration Procedures specifically apply to disputes between the Funds and an employer involving payroll audits and/or claims for delinquent contributions that are referred to arbitration pursuant to the Trust Agreement. (Id.)

Petitioners have demonstrated that they complied with their obligations under the PSA, MTDC Independent Agreement, Trust Agreements, and Arbitration Procedures, sending defendant notice of the deficiencies claimed, an audit detailing the amounts due, and a demand for payment. (Id. at Ex. 5.) Petitioners further sent Super notice of their intent to arbitrate, and the arbitrator subsequently provided Super with notice of the hearing date. The arbitrator's decision found delinquencies in the amount of contributions for fringes, union dues, and PAC contributions due during the period of May 16, 2013 through February 27, 2015. (Id. at Ex. 1) The decision further found all amounts claimed by petitioners to be supported by the PLA. (Id.) The arbitrator based his decision on the payroll audit supporting the amount of the award and related documentary evidence. (Id.) In short, the arbitrator provided more than the "barely colorable justification" required to support the outcome of the arbitration. D.H. Blair & Co., 462 F.3d at 110.

Petitioners have met their burden of proving that no genuine issue of material fact exists. Accordingly, the Court confirms the arbitration award of $200,470.73 plus interest accruing at the statutory rate from the date of the August 12, 2015 award.

CONCLUSION

For the foregoing reasons, petitioners' motion to confirm arbitration (Dkt. No. 12) is GRANTED.

SO ORDERED.

                                                                        _____
                                                                                    P. Kevin Castel
                                                                          United States District Judge

Dated: New York, New York
            June 26, 2017